UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAROLD THORNTON, | CIVIL ACTION NO. 3:CV-12-1264 |
| Petitioner | (Judge Nealon) |
| v. | |
| WARDEN J. E. THOMAS, | |
| Respondent | |

FILED
SCRANTON
DEC 3 0 2013
PER _____
DEPUTY CLERK

## MEMORANDUM

Harold Thornton, an inmate formerly confined in the United States Penitentiary, Lewisburg, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing held on July 23, 2010, at the United States Penitentiary, Hazelton, Pennsylvania, where he was found guilty of the prohibited acts of Fighting with Another Person, and Refusing an Order, violations of Disciplinary Code Sections 201 and 307. Specifically, he argues that the Disciplinary Hearing Officer ("DHO") found him guilty of an Act (Fighting) for which he was not originally charged. (Doc. 1, petition at 2). For relief, Petitioner seeks the expungement of the incident report and sanction, and restoration of his forfeited good conduct time. (Doc. 8, traverse). The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On May 26, 2010, Petitioner was served with Incident Report No. 2020612 charging him with "Demonstrating, Practicing or Using Martial Arts, Boxing, Wrestling or Other Physical Encounter; Refusing an Order from Staff", a violation of Codes 220 and 307. (Doc. 7, Att. A at 4, Incident Report). The incident report, which was written by Lieutenant A. Vero, reads as follows:

> On May 25, 2010, at approximately 5:58 p.m., while responding to a fight in progress in A-1, I observed another incident in the common area. Specifically, I observed inmates McCarter, Zevon, and inmate Thornton, Harold, Register #21229-018, squared at each other, throwing closed fist punches at each other but not striking each other. I gave both inmates an order to stop fighting and get on the ground, and they refused these orders and continued to square off at each other. Immediate use of force was utilized on both inmates to control their combative actions.

Id. On May 26, 2010, Lieutenant Stauffer informed Thornton of his rights, and was given a copy of the report. (Id. at 5, Inmate Statement and Attitude). Inmate Thornton made the following statement: "Not much to say, it is what it is." Id. His attitude was noted as "reasonable and cooperative during this investigation." Id.

On June 3, 2010, Warden James Cross approved an extension of time within which to hold the Unit Discipline Hearing based on the fact that the Unit Team did not receive Thornton's incident report until June 1, 2010. See (Doc. 7, Att. 1 at 6, June 3, 2010 Memorandum).

2

On June 23, 2010, Petitioner appeared before the Unit Discipline Committee ("UDC"). (Id. at 4, Committee Action). Because the UDC decided that greater sanctions were needed, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), with the recommendation of twenty-seven (27) days loss of good conduct time, ninety (90) days loss of commissary and email, and fifteen (15) days disciplinary segregation. Id.

Also on June 23, 2010, Thornton was provided with a "Notice of Discipline Hearing before the (DHO)" form, in which he was notified that his hearing would placed on the next available docket. (Id. at 23). Thornton waived his rights to have a staff member represent him and to call witnesses. Id.

On July 23, 2010, Petitioner appeared for a hearing before DHO, R.E. Brinson. (Id. at 1-3, DHO Report). During the DHO hearing, Petitioner was again read his rights and he indicated that he understood them. Id. The DHO confirmed that Thornton received a copy of the incident report, and that he did not want a staff representative, or to call witnesses. Id. When asked if he believed the report to be true, Thornton stated that he was having problems with his cell mate and the other inmate swung at him first. Id.

The documentary evidence which the DHO considered in making his determination included: (1) Seven (7) Memoranda dated May 25, 2010, from

3

Lieutenant A. Vero, Senior Officer Specialists N. Tokish, J. Shirk, N. Shultz, and J. Squires, Counselor A. Cranford, and Senior Officer C. Newsom; (2) Health Services Clinical Encounters, dated May 25, 2010, for inmates McCarter and Thornton; (3) Administrative Detention Orders dated May 25, 2010, for inmates McCarter and Thornton; (4) Photo Sheet dated May 25, 2010, of inmate McCarter; (5) Three (3) Photo Sheets dated May 25, 2010 of inmate Thornton; and (6) Chain of Custody Log dated May 25, 2010 for VHS tape. Id. at p. 2. The specific evidence taken from the relied upon documentary evidence was as follows:

> Your Due Process rights were reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present and waived our rights to a witness or a staff representative. You indicated to the DHO you were ready to proceed. The DHO notes the UDC hearing was delayed beyond the usual time frames and held on June 23, 2010 with the written approval of the Warden authorizing delays. There is no indication you have been adversely affected in any was as a result of the delays and the hearing continued.
>
> The DHO finds you committed the prohibited act of Code 201, Fighting with Another Person, and Code 307, refusing to Obey an Order Given by Staff, while incarcerated at the United States Penitentiary, Hazelton, West Virginia on May 25, 2010, at approximately 5:58 PM, in the A-1 Unit Common Area, when Lieutenant Vero observed you, inmate Thornton, H. # 21229-018, and inmate McCarter, Z., engaged in a physical altercation throwing punches at each other, throwing closed fist punches at each other but not striking each other. I gave both inmates an order to stop fighting and get on the ground, and they refused these orders and continued to square off at each other. Immediate use of force was

4

utilized on both inmates to control their combative actions.

Also relief on is your admission in addition to the supporting memorandum and the medical assessments for the inmates involved that were presented during the hearing.

At the DHO hearing, you stated that you were having problems with your cell mate and inmate McCarter was swinging punches at you. The DHO considered your admission in addition to the Reporting Officer's statement and supporting evidence and is convinced you are being properly charged. Therefore, based on these facts, the DHO finds your actions are in violation of prohibited act Code 201, Fighting with Another Person, and Code 307, Refusing to Obey Orders from Staff.

Id. The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good conduct time; thirty (30) days disciplinary segregation suspended 180 days pending clear conduct; and ninety (90) days loss of commissary privileges. Id. The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety, and welfare of not only him, but all other inmates and staff within the institution and disrupts the orderly running of the institution. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve.
>
> To hold you accountable for choosing to participate or attempt to participate in a hostile physical encounter with another inmate, and to deter you from engaging in such violent and inappropriate behavior in the future, I have ordered a disallowance of 27 days of your Good Conduct Time, 30 days of Disciplinary Segregation suspended 180 days pending clear conduct and the restriction of

5

> your commissary privileges for 90 days. Hopefully, these sanctions
> are sufficient to impress upon you the seriousness of your actions
> and encourage more appropriate behavior in the future. If not, be
> advised the Discipline Policy provides for the imposition of
> enhanced sanctions for repetitive acts of the same code. Should you
> engage in similar misconduct in the future, it is likely the
> consequences will be more severe.

Id. Thornton was advised of his appeal rights at the conclusion of the hearing. Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Because Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four (24) hour advance written notice of

6

the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

Thornton's disciplinary hearing was held in July 2010. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to the 2010 regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations

7

has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Thornton was afforded all of the required procedural rights set forth in Wolff. Thornton received notice of the charges against him on May 26, 2010, the day after the incident occurred. Although Thornton's UDC hearing was held not held until June 23, 2010, included in the DHO packet is documentation from the USP-Hazelton Warden, approving an extension request that

8

the UDC hearing take place on June 23, 2010. The DHO noted in his report that he did not believe Thornton was adversely affected in any way as a result of the delay. This Court agrees. Petitioner's singular challenge to the delay in his initial hearing does not automatically equate to a violation of his Due Process rights. See Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines."). The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. Id. Wolff does not set a three- or seven-day limit, or any time limit, for the hearing. No Due Process violation occurred by holding Petitioner's initial hearing outside of the "ordinary" three-day period.

Furthermore, the true measure of whether a due process violation occurred as a result of a delay in Thornton's disciplinary process is whether he suffered harm or some form of prejudice as a result. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D. Pa. 1994). This is not a case wherein Petitioner was denied a hearing before the UDC or DHO. He does not dispute the DHO's findings. He simply argues that "procedural issues" were not followed. No where in his Petition does Thornton argue that he was harmed, prejudiced or otherwise disadvantaged by the delay in his UDC hearing. Von Kahl, 855 F. Supp. at 1421-1422 ("[T]his court is

9

reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."). Thus, this Court finds no violation of Due Process rights associated with Petitioner's claim, and therefore, will deny habeas relief on this claim.

Moreover, in keeping with Wolff, Thornton received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Thornton waived his right to call witnesses, make a statement, and chose not to provide any documentary evidence. Petitioner also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Id. Petitioner was then notified of his right to appeal. Id.

To the extent Petitioner argues that the DHO found him guilty of Fighting, an act, he claims he was not originally charged with, BOP policy as codified at 28 C.F.R § 541.8(a)(1) provides that the DHO may find that an inmate "committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report." 28 C.F.R § 541.8(a)(1). The DHO noted that he relied on Lieutenant Vero's statement as set forth in the incident report that on May 25, 2010,

"while responding to a fight in progress", Vero observed Thornton and another inmate "throwing closed fist punches at one another, but not striking one another". He ordered Thornton and the other inmate to "stop fighting and get on the ground, and they refused these orders and continued to square off at each other". "Immediate use of force was used to control both inmates' combative actions." The DHO also noted that he relied on Thornton's admission that he was having trouble with his cellmate and the other inmate was swinging punches at him. In addition to the incident report and investigation, the DHO considered the following documents: seven (7) different memoranda, all dated May 25, 2010; medical records and detention orders for both Thornton and his cellmate; photos; and the chain of custody log dated May 25, 2010, for the VHS tape. Thus, the record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported that Thornton had committed the prohibited acts of Fighting and Refusing an Order (Codes 201/307). Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 200-level, high

severity prohibited act, and a 300-level, moderate severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 200 level offenses:

> B.1. Disallow ordinarily between 14 and 27 days of good conduct time;
> D. Disciplinary segregation (up to 30 days); and,
> G. Loss of privileges; commissary, movies, recreation, etc.

28 C.F.R. § 541.13 (Tables 3 and 4). Thus, the sanctions imposed by the DHO in the present case (i.e., 30 days disciplinary segregation, 90 days loss of commissary privileges, and loss of 27 days of good conduct time) were consistent with the severity levels of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

A separate order will be issued.

Dated: December 30, 2013

_____
**United States District Judge**